**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | Bankruptcy No. 19-10852-TPA |
| Derek S. Kerr, | : | |
| Debtor | : | Chapter 13 |
| | : | |
| Derek S. Kerr, | : | Related to Docket No. 107 |
| Movant | : | |
| v. | : | |
| Quicken Loans, Inc., | : | |
| Respondent | : | |
| Ronda J. Winnecour, Esquire, | : | |
| Chapter 13 Trustee, | : | |
| Additional Respondent | : | |

# Exhibit "B"

This Document Prepared By:
**DAVID O'BRIEN**
**QUICKEN LOANS, LLC**
**635 WOODWARD AVE**
**DETROIT, MI 48226**
**(888) 663-7374**

When Recorded Mail To:
**FIRST AMERICAN TITLE CO.**
**3 FIRST AMERICAN WAY**
**SANTA ANA, CA 92707-9991**

Tax/Parcel #:
_____ [Space Above This Line for Recording Data] _____

Original Principal Amount: $110,461.00           FHA Case No: 4̶4̶2̶X̶4̶2̶1̶2̶1̶6̶X̶X̶7̶0̶3̶X̶
Unpaid Principal Amount: $103,301.13            Loan No: X̶3̶4̶9̶3̶X̶2̶8̶2̶9̶
New Principal Amount: $117,004.00
Capitalization Amount: $13,702.87

# HOME AFFORDABLE MODIFICATION AGREEMENT
# (MORTGAGE)
## (Step Two of Two-Step Documentation Process)

Executed on this day: **JANUARY 5, 2021**
Borrower ("I"):[1] **DEREK KERR AND MEGAN N. KERR, HUSBAND AND WIFE**
Borrower Mailing Address: **8 ELM DR, BROOKVILLE, PA 15825**
Lender or Servicer ("Lender"): **QUICKEN LOANS, LLC F/K/A QUICKEN LOANS INC.**
Lender or Servicer Address: **635 WOODWARD AVE, DETROIT, MI 48226**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): **DECEMBER 18, 2015**
Loan Number: X̶3̶4̶9̶3̶X̶2̶8̶2̶9̶

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

Multistate Home Affordable Modification Agreement – Single Family                              19    X̶X̶X̶X̶X̶X̶X̶X̶
09042020_56

Page 1

Property Address: **8 ELM DR, BROOKVILLE, PENNSYLVANIA 15825**

Legal Description:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

**Prior instrument reference: Recorded on DECEMBER 18, 2015 in , of the Official Records of JEFFERSON COUNTY, PENNSYLVANIA**

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.
I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations and Covenants.** I certify, represent to Lender, and agree:

    A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future. However, I believe that I can presently afford to make the modified mortgage payments shown below.

    B. (i) The Property has not been condemned; (ii) one of the borrowers signing this Agreement lives in the Property as a principal residence, or the Property is a rental property; and (iii) if the Property is a rental property, the certifications I have made concerning my intended use of the Property and the number of single-family properties that I own continue to be true and correct on the day hereof;

    C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

    D. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct.

    E. If Lender requires me to obtain credit counseling in connection with the Program, I will do so.

    F. I have made or will make all payments required under a trial period plan or Loan Workout Plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **AUGUST 1, 2020** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on **SEPTEMBER 1, 2020**.

    A. The Maturity Date will be: **AUGUST 1, 2050**.

    B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not credited to my Loan. The new principal balance of my Note will be $117,004.00 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

    C. Interest at the rate of **3.2500%** will begin to accrue on the New Principal Balance as of **AUGUST 1, 2020** and the first new monthly payment on the New Principal Balance will be due on **SEPTEMBER 1, 2020**. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-30 | 3.2500% | 08/01/2020 | $509.21 | $377.48 May adjust periodically | $886.69 May adjust periodically | 09/01/2020 | 360 |

*The escrow payments may be adjusted periodically in accordance with applicable law and

Multistate Home Affordable Modification Agreement – Single Family                                    19   XXXXXXXX
09042020_56
Page 3

therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4. **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or workout plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to

provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.F. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.F.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to

make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

G. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

J. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

K. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

L. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my

signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

P. If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain additional advances, and must make payments according to this Agreement. (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit, and if so, I confirm and acknowledge that no additional advances may be obtained.)

In Witness Whereof, I have executed this Agreement.

_____ *Derek* _____    1-14-21
Borrower: **DEREK KERR**    Date

_____ *Megn N. Ker* _____    1-14-21
Borrower: **MEGAN N. KERR** *signing solely to acknowledge this Agreement, but not to incur any    Date
personal liability for the debt

_____ [Space Below This Line for Acknowledgments] _____

**BORROWER ACKNOWLEDGMENT**

State of Pennsylvania
County of Jefferson

This record was acknowledged before me on _____
(date) by DEREK KERR, MEGAN N. KERR (name(s) of individual(s)).

*Katina M. Kiehl*                                   (Stamp)
Signature of notarial officer

                                        Commonwealth of Pennsylvania - Notary Seal
                                        Katina M. Kiehl, Notary Public
Katina M. Kiehl, Notary Public          Jefferson County
Printed Name and Title of office        My commission expires February 4, 2022
                                        Commission number 1221937
                                        Member, Pennsylvania Association of Notaries

My commission expires: Feb. 4, 2022

Multistate Home Affordable Modification Agreement – Single Family                    19    XXXXXXXX
09042020_56
Page 8

In Witness Whereof, the Lender has executed this Agreement.

**QUICKEN LOANS LLC F/K/A QUICKEN LOANS INC. BY FIRST AMERICAN TITLE INSURANCE COMPANY, AS ITS ATTORNEY-IN-FACT**

By _____ _____ _____
                                        (print name)                                Date
                                        (title)

_____ [Space Below This Line for Acknowledgments] _____

**LENDER ACKNOWLEDGMENT**

STATE OF CALIFORNIA

COUNTY OF ORANGE

The foregoing instrument was acknowledged before me this_____

by _____, the _____ of **QUICKEN LOANS LLC F/K/A QUICKEN LOANS INC. BY FIRST AMERICAN TITLE INSURANCE COMPANY, AS ITS ATTORNEY-IN-FACT**, a company, on behalf of said company.

_____
Notary Public

Printed Name: _____

My commission expires: _____

**Drafted By:**
**QUICKEN LOANS, LLC**
**635 WOODWARD AVE**
**DETROIT, MI 48226**

## Addendum

This Addendum is made a part of that Loan Modification Agreement entered into between «Mf_LenderName_MD» (the "Lender") and **DEREK KERR AND MEGAN N. KERR, HUSBAND AND WIFE** (the "Borrower") dated **JANUARY 5, 2021** the "Loan Modification Agreement").

Notwithstanding anything to the contrary contained in the Loan Modification Agreement, the parties hereto acknowledge the effect of a discharge in bankruptcy that may have been granted to the Borrower prior to the execution hereof and that the Lender may not pursue the Borrower for personal liability. However, the parties acknowledge that the Lender retains certain rights, including but not limited to the right to foreclose its lien under appropriate circumstances. The parties agree that the consideration for this Agreement is the Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of the Borrower's default of its obligations thereunder. Nothing herein shall be construed to be an attempt to collect against the Borrower personally or an attempt to revive personal liability. Notwithstanding any monthly payments hereunder, Borrower understands that (1) Lender's sole recourse is the enforcement of its security interest in the Property and any action which may exist in relation to the Property itself and that (2) nothing in this Agreement revives or purports to revive any debt, or create any personal liability or obligation for a debt, that was discharged in bankruptcy.

_____     _____
Lender Signature                                                              Date
By:
Title:

__/s/ Derek Kerr_____     __1-14-21_____
Borrower: **DEREK KERR**                                                      Date

__/s/ Megan N. Kerr_____     __1-14-21_____
Borrower: **MEGAN N. KERR**                                                   Date

Multistate Home Affordable Modification Agreement – Single Family                    19   XXXXXXXXXX
09042020_56
Page 10

# CERTIFICATE OF RESIDENCE

## TITLE OF DOCUMENT
HOME AFFORDABLE MODIFICATION AGREEMENT (MORTGAGE)

## BETWEEN:
DEREK KERR, MEGAN N. KERR (assignor/Mortgagor/grantor)

## AND:
QUICKEN LOANS LLC F/K/A QUICKEN LOANS INC. BY FIRST AMERICAN TITLE INSURANCE COMPANY, AS ITS ATTORNEY-IN-FACT (assignee/Mortgagee/grantee)

I do hereby certify that the precise address of the within named Mortgagee is:
QUICKEN LOANS LLC F/K/A QUICKEN LOANS INC. BY FIRST AMERICAN TITLE INSURANCE COMPANY, AS ITS ATTORNEY-IN-FACT
635 WOODWARD AVE
DETROIT, MI 48226

*By:* _____

*Print Name:* _____

*Title:* _____

04052011_StateSpecific_48                                                                                           19   XXXXXXXX

**QuickenLoans**
Engineered to **Amaze**
1050 Woodward Avenue | Detroit, MI 48226

# Correction Agreement

## Loan Information
Loan Number: XXXXXXXXXX
Property Address: 8 ELM DR
BROOKVILLE, PA 15825
Notice Date: 01/05/2021

Hi, DEREK KERR and MEGAN N. KERR.

By signing this, you are agreeing to the below:

I/We authorize First American Title Insurance Company to correct any typographical or clerical errors in my/our loss mitigation documentation, including any loan modification agreement, FHA partial claim mortgage or other documentation that I/we signed in connection with my/our loss mitigation solution approved by Quicken Loans, LLC. First American Title Insurance Company is authorized to place my/our initials on my/our behalf on the documents where the changes are made.

Examples of typographical or clerical errors that First American Title Insurance Company can correct on my/our behalf include the following:

- Errors in the spelling of my/our name or my/our mailing or property address
- Adding the legal description of my/our property if it was inadvertently omitted
- Correcting any dates to accurately reflect my/our signing date
- Correcting errors or adding information to ensure the title vesting on the loss mitigation documentation matches the title to my/our home as it appears on the most recent deed
- Correcting errors with the identification of the recorded mortgage on my/our modification agreement
- If applicable, adding the name of my/our condominium or planned urban development (PUD) project if it was inadvertently omitted

**This Correction Agreement will not be used in any way to change the terms of my/our loss mitigation solution, including my/our new interest rate, loan term, loan amount or monthly payment as set forth in my/our approval letter.**

If this Correction Agreement is used, I/we will be notified and receive a copy of the corrected document.

continued →

**Questions?** Contact Your Quicken Loans Team.
Phone: (800) 508-0944
Email: AccountResolution@QuickenLoans.com
Secure Fax: (877) 380-5084

Hours: Monday - Friday: 8:30 a.m. - 9:00 p.m. ET
Saturday: 9:00 a.m. - 4:00 p.m. ET

**Quicken Loans**
Engineered to Amaze

1050 Woodward Avenue | Detroit, MI 48226

## Correction Agreement

### Loan Information

Loan Number: XXXXXXXXXX
Property Address: 8 ELM DR
BROOKVILLE, PA 15825
Notice Date: 01/05/2021

By signing this, I/we authorize First American Title Insurance Company to sign my/our initials on my/our behalf to correct any typographical or clerical errors in my/our loss mitigation documentation.

If this Correction Agreement is used, I/we will be notified and receive a copy of the corrected document.

_____   1-14-21
DEREK KERR                      Date

_____   1-14-21
MEGAN N. KERR                   Date

If you have an active bankruptcy or you received a bankruptcy discharge, we are sending this for informational or legal purposes only. We're not trying to collect against you personally. If you have any questions about this communication or your obligation to pay, please contact your attorney.
If you want to send us a Qualified Written Request, a Notice of Error, or an Information Request, you must send it to the following address:
Quicken Loans, LLC
P.O. Box 442359
Detroit, MI 48244-2359
Fax: (877) 382-3138

**Questions?** Contact Your Quicken Loans Team.

Phone: (800) 508-0944
Email: AccountResolution@QuickenLoans.com
Secure Fax: (877) 380-5084

Hours: Monday - Friday: 8:30 a.m. - 9:00 p.m. ET
Saturday: 9:00 a.m. - 4:00 p.m. ET